**STATE of Missouri, Plaintiff–Respondent,**

v.

**James S. BRADLEY, Defendant–Appellant.**

No. 23965.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 1, 2001.

Stacie Bilyeu, Springfield, MO, for Appellant.

Darrell Moore, Pros. Atty., William O. Worsham, Asst. Prosecuting Atty., Springfield, MO, for Respondent.

PREWITT, Judge.

James Bradley ("Defendant") appeals from a judgment of the circuit court of Greene County, following non-jury trial, finding him guilty of driving while intoxicated. The court fined Defendant $500 and gave him a suspended sentence of 90 days in the Greene County jail. The court also placed defendant on unsupervised probation for 2 years, and ordered him to complete a substance abuse traffic offender program ("SATOP") and participate in any aftercare treatment recommended by the program. *See* § 302.010(21), RSMo 1994. Defendant challenges his conviction on appeal, claiming that he failed a field sobriety test and slurred his speech because he suffers from multiple sclerosis, not because he was intoxicated. We affirm the trial court's conviction.

On the evening of January 19, 2000, Officer Kenneth D. Walters, a trooper for the Missouri State Highway Patrol, was patrolling the area of Missouri Highway 13 and Interstate 44. At approximately 11:35 p.m., Officer Walters, who was driving southbound on Highway 13, observed a black Chevrolet pickup traveling northbound on Highway 13 in the right hand lane. The vehicle appeared to Officer Walters to be traveling at a high rate of speed, "significantly higher than the speed limit." The speed limit on that portion of Highway 13 was 65 miles per hour. Officer Walters' radar image indicated that the vehicle was travelling at a speed of 83 miles per hour. Officer Walters activated his emergency lights, made a U-turn through the median, and attempted to overtake the pickup. Officer Walters followed the vehicle after it turned onto Farm Road 94, and was able to stop the vehicle after it pulled into a private driveway by blocking the driver's egress with his patrol car. Officer Walters exited his patrol car, and the driver of the vehicle, James Bradley ("Defendant"), exited his.

Officer Walters noticed a strong odor of intoxicants on Defendant's breath and that Defendant's eyes appeared to be glassy. He observed that Defendant had trouble walking, as he staggered forwards and backwards. He also noted that Defendant slurred his speech. Officer Walters asked Defendant if he had been drinking that evening, and Defendant responded that he had had a glass of wine earlier in the evening. Walters asked Defendant to perform the gaze nystagmus field sobriety test. Walters observed a distinct nystagmus at maximum deviation in both of Defendant's eyes, indicating that Defendant was driving while intoxicated. Walters then asked Defendant to recite the alphabet from A to Z, which Defendant did correctly, although his speech was slurred and he sang rather than spoke the letters.[1]

Walters also asked Defendant to perform the one-leg-stand test and to submit to a portable breath test, both of which

---

1. A nystagmus is "a rapid involuntary oscillation of the eyeballs." *Webster's New Collegiate Dictionary* 783 (1973). An officer tests for nystagmus by shining a light into the suspect-ed offender's eyes and observing whether the pupils can follow a moving focus point (usually the officer's finger).

Defendant refused. Walters determined that Defendant was intoxicated and arrested him for driving while intoxicated.

After he arrested Defendant, Officer Walters searched Defendant's vehicle. In the vehicle, the officer found a glass mug with a yellowish-colored liquid and ice cubes in it. The officer thought that the beverage smelled of intoxicants. He also found a bottle of Crown Royal liquor that was only a quarter full inside the center console. In the back of the vehicle, the officer found an unopened twelve-pack of Bud Light and two unopened bottles of wine.

Officer Walters transported Defendant to the troop headquarters. Defendant placed his head against the window while en route to the station. At the station, Defendant was asked to submit to a breath test, which Defendant refused. Defendant also refused to sign any paperwork necessary for the officers to process his arrest.

The State charged Defendant with committing the class B misdemeanor of driving while intoxicated, in violation of § 577.010, RSMo Supp.1999, and the class C misdemeanor of speeding, in violation of § 304.010, RSMo Supp.1999. A hearing was held on October 5, 2000. Defendant's counsel asked the court to invoke the rule on excluding witnesses, which the court granted.

The State presented the testimony of Officer Walters, who testified to the events detailed above. Defendant's wife, Andrea Bradley, testified that Defendant suffers from multiple sclerosis, which causes impairment in his balance, vision and speech. She testified that the liquor found in Defendant's car, including the bottle of Crown Royal found in the truck's console, was being transported between the couple's two package liquor stores. Defendant's testimony coincided with his wife's. He testified that the quarter bottle of Crown Royal found in the vehicle was a "leaker"which he placed in the console to prevent it from spilling.

The State then offered in rebuttal the testimony of Officer Darren Whisnant. Defendant's counsel objected to Officer Whisnant's testimony on the basis that he had been in the courtroom during part of the trial, that he had not been endorsed as a witness and, because he was not the arresting officer, that the defense could not have anticipated his testimony. The court sustained Defendant's objection "as to the rule on any testimony that was the subject of what he heard," but otherwise, overruled the objection, stating that Defendant's counsel would be permitted to request a continuance to call an expert witness to rebut Officer Whisnant's testimony.

Officer Whisnant is the acting corporal of the Springfield Police Department's DWI Enforcement Unit and has received significant training on the horizontal gaze nystagmus test, a topic on which he has instructed cadets in the Springfield Police Academy. Officer Whisnant testified that he was instructed that multiple sclerosis may cause someone to fail the walk-and-turn and the one-leg-stand field sobriety tests and that it may cause a person to slur their speech. Whisnant testified that he was taught that approximately two percent of the population have a naturally occurring nystagmus and that certain medications will also show a horizontal nystagmus. He was not instructed as to whether multiple sclerosis would cause a nystagmus.

Following Whisnant's testimony, Defendant's counsel instructed the court that it would not need a continuance for an expert. The court found Defendant guilty beyond a reasonable doubt of driving while

intoxicated and acquitted Defendant of the speeding charge. This appeal follows.[2]

■ The standard of review in a court-tried criminal case is the same as for a jury-tried criminal case. *State v. Daniels,* 18 S.W.3d 66, 67 (Mo.App.2000). "The appellate court accepts the state's evidence as true and gives the state the benefit of all reasonable inferences, disregarding all evidence to the contrary." *Id.* We review the record "only to determine whether there was sufficient evidence from which the trier of fact could reasonably have found [the] defendant guilty." *State v. Spears,* 876 S.W.2d 33, 34 (Mo.App.1994).

Defendant makes three points on appeal. He argues in his first point that the trial court erred in overruling his objection to the State calling Officer Whisnant to testify "because said ruling was in violation of the rules of discovery, in that Officer Whisnant had not been endorsed prior to trial, and said testimony affected the result at trial."

■ Defendant bases his argument on Rule 23.01(f), which requires that the prosecution list the names of all material witnesses in the information. Late endorsement of witnesses is permitted "after notice to the defendant upon order of the court." Rule 23.01(f). But, as provided in the rule, endorsement of rebuttal witnesses is not required. *Id.* The courts recognize an exception to this rule by requiring the endorsement of witnesses who may be called to rebut a defense of alibi or mental disease or defect, neither of which is a factor in this case. *See State v. Gillis,* 812 S.W.2d 887, 891 (Mo.App.1991); *State*

*v. Reese,* 787 S.W.2d 768, 771 (Mo.App. 1990).

■ The trial court determines whether an individual is a proper rebuttal witness. *Gillis,* 812 S.W.2d at 891. An appellate court will not reverse the trial court because it admitted rebuttal evidence absent an abuse of discretion. *Id.* "Rebuttal evidence may directly or indirectly explain, counteract, repel or disprove a defendant's evidence either directly or by implication." *Reese,* 787 S.W.2d at 771. "[T]estimony used in rebuttal is not improperly admitted merely because it could have been used by the state in its case in chief." *Id.*

■ The testimony of Officer Whisnant was limited to whether multiple sclerosis is known to affect an individual's performance on field sobriety tests as Defendant claims. Officer Whisnant testified on direct examination that, to his knowledge, multiple sclerosis is not a condition that would cause a false failure on the horizontal gaze nystagmus test.[3]

On cross-examination, Officer Whisnant testified that he learned in training, "That multiple sclerosis may cause someone to fail the walk-and-turn and the one-leg-stand test[s]. Also, it may cause their speech to be slurred as that of a person that would be intoxicated." He admitted that his instruction did not "say either way" whether or not multiple sclerosis would affect an individual's results on the horizontal gaze nystagmus test.

■ Following cross-examination, Defendant refused the court's offer to grant a

---

**2.** The State was unable to prove whether the instrument used to check a tuning fork (used to check Officer Walters' radar equipment) was operating properly.

**3.** Counsel for the State asked, "Based on your training in the recognition of certain medical

conditions on the performance on a horizontal gaze nystagmus test, is the condition of multiple sclerosis one of those conditions that would cause a false failure on a horizontal gaze nystagmus examination?" Officer Whisnant responded, "No, sir."

continuance to permit Defendant to find an expert. "Failure to seek a continuance leads to the inference that the late endorsement was not damaging to the complaining party." *State v. Hutchison*, 957 S.W.2d 757, 764 (Mo.banc 1997). Indeed, Whisnant's testimony corroborated key points in Defendant's testimony and that of his wife.

We fail to find that the trial court abused its discretion in allowing Whisnant to testify as a rebuttal witness; the testimony did not prejudice defendant's substantial rights or alter the outcome of the trial. *See Reese*, 787 S.W.2d at 772. Defendant's first point is denied.

Defendant argues in his second point that the trial court erred in overruling his objection to permitting Officer Whisnant to testify as an expert witness because the State did not lay a proper foundation for the officer's testimony, in that Officer Whisnant "did not have sufficient experience and acquaintance with the subject about which he testified."

■ "The trial court is vested with broad discretion over questions concerning the relevance and admissibility of evidence." *State v. Newton*, 925 S.W.2d 468, 472 (Mo.App.1996). We uphold the trial court's determination of these matters unless the court clearly abused its discretion. *Id.*

■ "In order to lay an adequate foundation to establish the expertise of a witness it 'must be shown that a witness has sufficient experience and acquaintance with the phenomena involved to testify as an expert.'" *State v. Albanese*, 920 S.W.2d 917, 927 (Mo.App.1996) (quoting *State v. Watt*, 884 S.W.2d 413, 415 (Mo. App.1994)), *overruled on other grounds by State v. Beeler*, 12 S.W.3d 294 (Mo.banc 2000). The determination of whether the state has laid a proper foundation for the admissibility of expert testimony is within the discretion of the trial court. *See id.*

■ Officer Whisnant's expertise was based on the substantial training he had received on the horizontal gaze nystagmus ("HGN") test. He testified that he had received training on HGN through the police academy, the U.S. Department of Justice, and the National Highway Safety Administration and that he instructs other officers on how to perform the exam. On voir dire, Whisnant acknowledged that he was not a medical doctor and has not treated anyone with multiple sclerosis.

We fail to find that the trial court abused its discretion in permitting Whisnant to testify as an expert on the horizontal gaze nystagmus test. That Whisnant lacks medical training bears on the weight of his testimony, not its admissibility. Defendant's second point is denied.

Defendant argues in his third point that the trial court erred in finding him guilty of driving while intoxicated "because there was insufficient evidence at trial to find [Defendant] guilty of the crime beyond a reasonable doubt." Defendant argues that the testimony of the State's witnesses did not consist of sufficient facts to find beyond a reasonable doubt that Defendant was guilty of driving while intoxicated and that any facts indicating that Defendant was intoxicated that the State's witnesses presented were "sufficiently counteracted" by the testimony of Defendant's own witnesses.

■ Our review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to a determination of "whether sufficient evidence was presented from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt." *State v. Hughes*, 978 S.W.2d 24, 26 (Mo.App.1998). We accept as true all evidence and infer-

ences favorable to the verdict and disregard evidence and inferences to the contrary. *Id.* Determination of the credibility of witnesses is a matter for the trial court in a court-tried criminal case "and it is not within the province of an appellate court to pass on their credibility." *State v. Wilson,* 846 S.W.2d 796, 798 (Mo.App.1993).

 Under § 577.010, a person commits the crime of driving while intoxicated if he "operates a motor vehicle while in an intoxicated or drugged condition." § 577.010. Each word in the name of the offense, "driving while intoxicated," identifies an element of proof. *State v. Hughes,* 978 S.W.2d 24, 26 (Mo.App.1998). In other words, the state must prove "that the defendant operated a motor vehicle and that he did so while in an intoxicated or drugged condition." *State v. Austin,* 861 S.W.2d 334, 336, (Mo.App.1993). "Although chemical test results are also admissible to show intoxication in a prosecution for driving while intoxicated . . ., such evidence is not needed to make a submissible case." *State v. Blumer,* 546 S.W.2d 790, 791 (Mo.App.1977).[4]

In the present case, the evidence viewed in the light most favorable to the verdict shows that at the time of his arrest, the defendant was uncooperative; smelled strongly of liquor; had glassy eyes; was staggering and slurring his speech; refused to submit to a breath test; and had been observed speeding. In addition, Defendant admitted that he had been drinking, and Officer Walters testified that he found a glass mug containing ice cubes and a yellowish-colored liquid which smelled of intoxicants in the vehicle. Defendant also failed the horizontal gaze nystagmus field sobriety test. Officer Walters testified that in his opinion, the defendant was intoxicated.

As the officer testified, one of these factors alone may not be enough to arrest someone for driving while intoxicated. However, we are of the opinion that the coincidence of these factors, even taking Defendant's multiple sclerosis into consideration, is sufficient to establish beyond a reasonable doubt that Defendant was driving while intoxicated. Defendant's third point is denied.

The judgment is affirmed.

PARRISH, and RAHMEYER, JJ., concur.

4. That Defendant was driving the vehicle is not disputed.